## A95A1315. STEPHENSON v. THE STATE.
(462 SE2d 767)

Andrews, Judge.

Stephenson appeals from the denial of his motion for new trial on his conviction of burglary.[1]

1. The eighth enumeration of error addresses the alleged insufficiency of the evidence and is addressed first.

"On appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

So viewing the evidence, it was that Henry owned book stores which specialized in paperbacks and collectible comic books. On the evening of Sunday, November 23, 1986, he closed and locked his Clayton County store for the evening around 8:00 p.m. In anticipation of the upcoming holiday season, he had ordered a $40,000 inventory of comic books which he had recorded for his records. In a glass display case he had arranged 400 comic books valued at approximately $10,000. When he arrived on Monday to open the store around 8:00 a.m., the front door was slightly ajar. The glass door, which had metal edging and handle, was missing the cylinder out of the lock. The discarded cylinder was later found outside on the sidewalk and was reinstalled by a locksmith who was able to rescrew it into its seat since it had not been damaged when removed. Inside, he discovered that the comic books in the display case, two valuable collectible toys, and $150 in cash were missing.

He called four other stores in the metro area which handled such merchandise and reported the missing items. Because of the nature of the comic book collectibles industry, books can be recognized by their condition, such as a crease or altered staple, as well as their titles. On Tuesday, Henry had one of his employees contact the fifth such store in Smyrna, which had been closed on Monday. Davis, owner of that store, spoke with her and made note of certain very unusual comics among those stolen, such as Green Hornet and X-Men comics, as well as several runs or complete series of some titles. In his 11 years in business, he had never seen a Green Hornet or X-Men comic book.

On Tuesday, November 25, around 3:30 p.m., Stephenson came into Davis' store with a box of comic books, inquiring as to their

---

[1] Stephenson was tried and sentenced in June 1987 while represented by counsel. He filed an untimely pro se request for sentence review and a pro se motion for out-of-time appeal, the former of which was dismissed, the latter denied. On April 5, 1994, after a habeas corpus hearing, he was granted an out-of-time appeal.

worth. Davis looked through the books, locating a Green Hornet and other suspicious comics. He told Stephenson that some were similar to some stolen ones and he wanted to check on it. Stephenson told him that an uncle, either "Jim" or "Tom," had given them to him and asked if he could use Davis' phone. Davis, standing close by, heard Stephenson say that "they were giving him trouble." After getting off the phone, Stephenson said he was going to get written proof and declined to stay with Davis until Henry or one of his employees arrived to check the comics. Stephenson did, however, agree to leave the box of comics, which Davis opined was unusual, considering their apparent value. One of Davis' customers noted the license number of the car, which was reported to the police. Stephenson never returned to the store, and Davis picked his photo from a photo spread. Upon arriving, Henry's employee identified the nearly 200 comics as Henry's and returned them to him for sale during the holiday season.

On November 17, 1986, Stephenson rented a car from a local rental agency. While doing so, he talked to the clerk and told her he was a locksmith with Lock Surgeon and had done some work that day for her company in another office, which was true. He saw her floor safe and commented that, if she would lock it, he could open it in a couple of minutes. The car was not returned by him until December 2, 1986. The clerk verified that the license number recorded by Davis' customer was that of the car Stephenson rented.

In early December, two Newberry brothers and their father were doing a three-day roofing job on an apartment complex off Six Flags Road near Austell. J. A. Newberry, one of the brothers and boss of the roofing crew, testified that on the last day, his father and other laborers were cleaning up on the job and he saw his father bring a large number of comic books back to their truck. No one in the truck had any comic books prior to this. Also, J. A. said that he had seen Stephenson around the apartments every day of the three they were working there.

On December 11, 1986, on the way to another job, the Newberry brothers took the comic books into Henry's College Park store to see how much they were worth. Told by Henry that they were the other missing 202 comic books, the Newberry brothers waited for the police to come and interview them. Asked why they waited, J. A. said because they had not done anything. The father, who drifted and apparently was homeless, could not be located.

Stephenson testified that he had rented the car and he was a master locksmith. He denied entering the store, stating that on Tuesday after the burglary a friend named Arnold Kimmons, another locksmith, had offered to trade him the comic books for five deadbolt locks which Kimmons needed for a job but could not get wholesale due to his bad credit. The five locks which Stephenson traded Kim-

mons cost Stephenson $85.

Stephenson admitted taking the books to sell them. He denied telling Davis an uncle gave them to him, stating he said Arnold Kimmons had. He testified that he called Arnold from the store and asked if they were stolen. Kimmons, according to Stephenson, responded they "might be a little warm." Stephenson said he left and returned to his Austell apartment where he had left the remaining comics on the back porch, but they were gone.

Stephenson had no address for Kimmons, no phone number other than one which was supposedly displayed on Kimmons' car for his "mobile" locksmith service, and had been unable to reach him or give his whereabouts.

We find the evidence legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Bolar v. State*, 216 Ga. App. 195, 197 (4) (453 SE2d 790) (1995).

2. Enumerations four and five deal with the court's charge on flight and are considered together. Four alleges that the evidence was insufficient because that issue was not raised by the evidence. We disagree. *Renner v. State*, 260 Ga. 515, 517 (3) (a) (397 SE2d 683) (1990).

Five contends that the court erred in charging on flight "when the court failed to notify counsel during the charge conference that this charge would be given." First, we note that the giving of the charge in a case where the evidence justified it was not error when this case was tried in 1987. *Renner*, supra.[2] Secondly, there is no recorded charge conference, and this Court will not assume error where none appears. Stephenson has failed to carry his appellate burden as to this issue. *Ross v. State*, 214 Ga. App. 385 (448 SE2d 52) (1994). We note that the record does reflect that neither the State nor Stephenson filed any written requests to charge.

3. The third enumeration is that the court erred in including the phrase "moral and reasonable certainty" in its charge on reasonable doubt.

Although disapproved by the Supreme Court in *Vance v. State*, 262 Ga. 236, 238, fn. 5 (416 SE2d 516) (1992), even if given, such a charge is not reversible error if the charge, as a whole, repeatedly and accurately conveyed to the jury the concept of reasonable doubt. Id.; *Moore v. State*, 212 Ga. App. 497, 498 (2) (442 SE2d 311) (1994). The charge here did so.

4. The first and second enumerations deal with claimed errors in the sentencing of Stephenson and are considered together.

Stephenson's indictment, which was redacted when given to the jury for its deliberations, contained notice that he was being indicted

---

[2] The publication date of *Renner* was January 10, 1991.

as a recidivist under OCGA § 17-10-7 (a) for two prior felonies, a burglary in Gwinnett County and a theft by taking conviction in Clayton County. Thereafter, in May 1987, Stephenson was convicted in Fulton County of rape, aggravated assault, and kidnapping. By amended notice dated June 9, 1987, the day this burglary trial began, the Fulton conviction was included as a third felony.

At the sentencing hearing on June 10, trial counsel for Stephenson objected to the consideration of the Fulton conviction on the ground that it was not final since the 30 days for appeal had not yet lapsed, although no notice of appeal had been filed to date. The court overruled this objection without comment.

The sentence, as entered, was that Stephenson be sentenced to 20 years to be served consecutively to the sentence he was then serving and that "[t]he Court finds prior to having committed the above offense the defendant had previously been found guilty of the following felonies, to wit: [the Gwinnett County burglary and the Clayton County theft by taking]. This sentence is imposed under OCGA § 17-10-7."

OCGA § 17-10-7 (a) provides that any person "convicted of a felony offense in this state . . . and sentenced to confinement in a penal institution, who shall afterwards commit a felony punishable by confinement in a penal institution, *shall* be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he . . . stands convicted, provided that, unless otherwise provided by law, the trial judge *may*, in his . . . discretion, probate or suspend the maximum sentence prescribed for the offense." (Emphasis supplied.)

The first enumeration is that the court erred in considering the Fulton conviction, which was not yet final. This is correct. *Mitchell v. State*, 202 Ga. App. 100, 101 (2) (413 SE2d 517) (1991); *Dunn v. State*, 208 Ga. App. 197, 198 (4) (430 SE2d 50) (1993). This alone, however, does not merit a resentencing proceeding as requested by Stephenson.

Although the court overruled the objection to the certified copy of the Fulton conviction, the Clayton and Gwinnett convictions were also tendered. After sentencing Stephenson to the full 20 years for burglary, consecutive, the court stated "I might add to the record that this indictment is brought under the Habitual Criminal Act. Now you are found to be an habitual criminal with *two* prior convictions, this sentence is imposed under that act." (Emphasis supplied.)

Since there were two other valid felonies for the court's consideration, Stephenson has failed to show harm from any error in the al-

lowance of the Fulton conviction.[3]

The second enumeration is that the court "failed to exercise its discretion in sentencing . . . because the court failed to consider sentencing Appellant to a period of probation and less than the maximum to serve. . . ."

We cannot assume, from the record before us, that the court failed to exercise the discretion which is allowed but not required to be exercised by OCGA § 17-10-7 (a). This is what Stephenson's argument, made without citation of authority, would require us to do. Since the sentence is within the statutory limits of OCGA § 17-10-7 (a), there is nothing for us to review. *Dryer v. State*, 205 Ga. App. 671, 673 (4) (423 SE2d 297) (1992) (physical precedent).

5. The sixth enumeration is that the court erred in allowing "the hearsay identification testimony by Mr. Newberry, Jr. [J. A.], that his father told him that he obtained the comic books from [Stephenson]." Trial counsel's hearsay objection to this testimony, albeit made several questions after the statement was made, was sustained by the trial court. This enumeration raises nothing for us to consider.

6. Finally, appellate counsel contends that the trial court's denial of the motion for new trial on the ground of ineffective assistance of counsel was error.

This issue was raised below by the post habeas corpus motion for new trial, and trial counsel testified, although some seven years after the trial. The trial court denied the motion.

" ' "The bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [Cit.] In order to prevail on an ineffectiveness claim, a convicted defendant must show (1) "that counsel's performance was deficient," i.e., that counsel's performance was not reasonable under all the circumstances, and (2) that this "deficient performance prejudiced the defense," i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Cit.] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Cit.] The complaining defendant must make both showings.' *Ford v. State*, 255 Ga. 81, 85 (8) (335 SE2d 567) (1985)." *Richardson v. State*, 194 Ga. App. 358 (390 SE2d 442) (1990).

The 85-page transcript of the motion for new trial hearing is included in the record, and Stephenson's trial counsel testified extensively about his actions, claimed lack of action, and strategy. The trial

---

[3] The conviction was later affirmed by this Court. *Stephenson v. State*, 191 Ga. App. 877 (383 SE2d 363) (1989).

court concluded that the claimed ineffective assistance claim was meritless. The trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. *Smith v. State*, 216 Ga. App. 415, 416 (3) (454 SE2d 615) (1995). Having examined this transcript, the ruling was not clearly erroneous.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 14, 1995 —
RECONSIDERATION DENIED OCTOBER 2, 1995 — 

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellee.